IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACKIE DENMARK,

        **Plaintiff,**

    v.              //   CIVIL ACTION NO. 1:14CV58
                           (Judge Keeley)

CPL. D.P. STARCHER,

        **Defendant.**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72], and DISMISSING CASE WITH PREJUDICE

Pending before the Court are competing motions for summary judgment filed by the parties. The first is a motion for summary judgment (dkt. no. 70) filed by the defendant, Corporal D.P. Starcher ("Starcher") of the West Virginia State Police. The second is a motion for partial summary judgment (dkt. no. 72) filed by the plaintiff, Jackie Denmark ("Denmark"). For the reasons that follow, the Court **GRANTS** Starcher's motion and **DENIES** Denmark's motion.

### I. BACKGROUND

**A.  Factual Background**

As it must, the Court construes the facts in the light most favorable to each non-movant. See <u>Ussery v. Manfield</u>, 786 F.3d 332, 333 (4th Cir. 2015).

In May, 2006, a seventeen year old boy named David Wayne Beach, III ("Beach") disappeared.[1] The police investigated Beach's

---

[1]The victim's name sometimes appears as "Beech" at various locations in the filings.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

disappearance after his mother reported him missing, but the only lead they had at the time was that Beach was a close friend of William Albert "Seth" Denmark ("Seth"). Based on that information, the Roane County, West Virginia, Sheriff's Office dispatched Deputy Sergeants Kevin Unger ("Deputy Unger") and Douglas Eldridge ("Deputy Eldridge") (collectively "the Deputies") to the Denmark residence to inquire as to whether anyone had seen Beach or knew of his whereabouts.

At the residence, the Deputies spoke with Seth and his girlfriend, Veronica Cottrill ("Cottrill"),[2] who was living there with her daughter. Both denied any knowledge of Beach's whereabouts. (Dkt. No. 7-3 at 2, DKt. No. 77-4 at 2). Notably, the Deputies never saw or spoke with either of Seth's parents, William Albert Denmark ("Mr. Denmark") or Jackie Denmark, because Seth advised them that his parents were not home. With no further leads, the investigation went cold.

Finally, in January, 2010, police received a break in the case when Cottrill informed them that she had knowledge of Beach's disappearance. On February 2, 2010, she provided police with a

---

[2]Cottrill's full name is Veronica Nicole Cottrill Clowser. Her name sometimes appears as "Cottrell" in the pleadings, and the Court will not alter the spelling where quoted.

detailed statement of the events that had culminated in Beach's murder and Seth's subsequent cover-up.[3] (Dkt. No. 77-12).

Cottrill recounted how she and Seth had picked up Beach while driving around Spencer, West Virginia, on May 14, 2006. (Dkt. No. 77-12 at 5). Seth had noticed Beach across from the courthouse and pulled over to speak to him. When Seth told Beach that he and Cottrill were going to his house for a little while, Beach got into the car and accompanied the pair to Seth's house in Calhoun County, West Virginia. Id. at 5-6.

Once at the house, Seth and Beach began playing video games. Shortly thereafter, Seth asked Beach to help him dig a hole, ostensibly to bury trash, up on a hill on the Denmark property. Id. at 6. At one point, Denmark asked Cottrill to go up on the hill to check on the boys. Id. Upon doing so, she observed a "huge hole," "big enough for [Beach] to stand up in," easily over five feet deep. Id. Cottrill noted that Seth and Beach were "joking and carrying on"; she did not believe Seth possessed a gun at that point. Id. After coming down from the hill, the boys, who by now

---

[3]Cottrill was accompanied to the interview by her father, Ronnie Cottrill. Chief Deputy Todd Cole and Lieutenant Jeff Smith of the Roane County Sheriff's Office conducted Cottrill's interview. (Dkt. No. 71-3 at 12).

were covered in mud from digging, began to wash each other off with the hose. Id. Cottrill recalled that Denmark took pictures of them. Id.

By this time, it was late evening, so the group sat down to eat dinner together. Id. at 7. Afterwards, Seth told Cottrill that he and Beach were going back up the hill to "put somethin' [sic] in [the hole] and they were gonna' [sic] bury it." Id. Prior to leaving, however, Seth went into his mother's bedroom, stating that he needed to retrieve something. Id. at 8. After doing so, Seth pulled his mother aside in the kitchen and spoke to her. Id. Whatever he told his mother upset her so terribly that she began screaming at him, "no, no, no." Id. Denmark then went into the living room and sat down, shaking her head. Id. In retrospect, Cottrill believed this was when Seth told his mother that he intended to shoot Beach, and that Denmark probably did not believe him because Seth had a history of making empty threats. Id.

About an hour later, while Cottrill, her daughter, and Denmark were alone in the house, four gunshots rang out. Id. When Denmark heard the shots, she jumped to her feet, began shaking her head, and put her hands on her head. Id. About fifteen minutes later, Seth returned to the house without Beach. Id. He was covered in mud

4

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

and demanded that Cottrill grab a flashlight and accompany him back
up the hill. Id. Initially, she refused. According to Cottrill,
Denmark told Seth "she doesn't need to go up there, she doesn't
need to do it."[4] Id. At that point, Seth pulled a .38 caliber
silver handgun with a white handle from his rear waist, and again
demanded that Cottrill grab a flashlight and come with him. Id. 8-
9, 10. This time she did so. Id. at 10.

Outside, Cottrill asked Seth what was happening. Rather than
explain, he instructed her to get on his four-wheeler and hold on
to a shovel that appeared to have just been hosed off. Id. At the
top of the hill, Cottrill noticed that the shovel had blood on the
end of it, and asked Seth why there was blood on the shovel, where
was Beach, and what was going on. Seth told her to shut up and do
what he said. Id. At that point, he again pulled the gun from his
waistline, pointed it at Cottrill, told her to grab the shovel and
follow him. Id.

The pair walked about 50-75 feet beyond an old fence on the
top of the hill to the hole the boys had dug. There, Cottrill saw

---

[4]At another point in her statement, Cottrill provides a very
similar, but slightly different recitation of Denmark's reply to
Seth's demand: "She said that I didn't need to go. That I didn't
need to be in it." (Dkt. No. 77-12 at 9).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

Beach's body lying in the hole, hunched up on his knees against the side wall, as if "he had just been dropped down in the hole." Id. at 11-12. Cottrill thought Beach was dead; blood was everywhere, and there was a hole in the back of Beach's head. Id. at 11.

At this point, Cottrill dropped everything and attempted to flee, but Seth grabbed her and threw her on the ground. Id. He demanded that she stand up and hold the flashlight; again, she refused. Id. At that point, Seth pointed the gun at her and threatened that if she attempted to leave he would shoot her. Id. To demonstrate how serious he was, Seth instructed her to watch as he fired another round into Beach's body. Id. Beach made a "groaning sound" and fell further into the hole. Id. Cottrill again attempted to flee, but stopped when Seth renewed his threats, stating that if she told anyone he would kill her and her daughter, and they would never be found. Id. at 12.

As Seth took up the shovel to fill in the hole, Cottrill dropped the flashlight and ran. Id. He chased her down, at which point she fell and cut her knee on the fence, resulting in a scar. Id. Seth pulled Cottrill back to the hole, tied her up, and forced her to watch as he spent the next forty-five minutes filling in the grave. Id.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

When they returned to the house, Denmark was crying, saying that she wanted to be left alone and "didn't want to see." <u>Id.</u> at 13. She then locked herself in her bedroom for the rest of the night. <u>Id.</u> at 22. Cottrill has never returned to the site of the murder. <u>Id.</u> at 12.

About a week or so later, someone came to the house asking about Beach.[5] <u>Id.</u> at 21. Cottrill stepped outside to see if everything was okay, but went back to the house after Denmark began crying. <u>Id.</u> As soon as Seth finished talking and came back inside, Denmark told him to "just get rid of it," which Cottrill took to mean the gun. <u>Id.</u>; <u>see also</u> <u>id.</u> at 14. Seth agreed to get rid of it later. <u>Id.</u> at 21. Later that night, Cottrill observed Seth place what she believed to be the handgun he had used to shoot Beach, wrapped in a sock, into a white plastic pipe sticking out of the ground near the house. <u>Id.</u> at 14-15, 21. She thought it was the same gun because it was his favorite gun, and the only one that he wrapped in a sock. <u>Id.</u> at 21.

---

[5]It is unclear who this person was. During Cottrill's statement, Deputy Todd Cole speculated that it could have been one of the other deputies. (Dkt. No. 77-12 at 21). One may query whether this was the visit by Deputies Unger and Eldridge, who reported that they did not speak to anyone other than Seth and Cottrill, and that Seth had told them his parents were not home.

7

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

Some time after that, Seth and Cottrill moved to Spencer, West Virginia. One night in December, 2006, Seth came home from work around 6:00 p.m. and told Cottrill that he had to go to his mother's house. Id. at 13. When he returned between two and three o'clock in the morning, he was covered with an awful smell.[6] Id.

When Cottrill pressed him to tell her what the smell was, Seth was evasive, stating vaguely that "you can never point, pin anything on me," and not to worry about it. Id. Eventually, he warned her: "[I]f you ever try and tell anybody what we've done it will all be your fault. . . . [I]f you open your mouth, you'll be dead too, so just keep it shut." Id.

The following day, Cottrill overheard Seth and his father talking about having dug up and burned Beach's body the night before. Id. at 13, 21. Although she did not hear anything about how or where they did it, Cottrill did hear Mr. Denmark state that he needed to get lye and "put lye on the fire pit and burn it again." Id. at 14. She also recalled that Seth had poured lye, or some other white substance,[7] all over the hole where he had buried

_____

[6]At another point in her statement, Cottrill places Seth's return at around 1:30 a.m.

[7]Cottrill discussed both lye and lime during her statement. Both are white powdery substances, and it is unclear whether she knew the difference between them or which was actually used.

8

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

Beach's body, and that she had seen large bags around the hole. Id. at 14, 19. Finally, Cottrill recalled that there were several burn pits on the Denmark property. Id. at 14.

Largely based on Cottrill's statement,[8] Starcher obtained a warrant to search the Denmark property.  On February 23, 2010, he and an anthropologist from the Smithsonian Institution, Dr. Owsley, accompanied West Virginia state troopers on the search. (Dkt. No. 7 at 5).

While at the site, they were able to confirm some of Cottrill's claims, including the layout of the property (dkt. nos. 71-3; 77-12 at 7), and the presence of a hole matching the description she had provided. (Dkt. No. 77-6 at 5, 9). Excavation in the area of the hole revealed a bullet and possible presence of lime. Although they found no body, Dr. Owsley's initial indications confirmed that human remains had been present in the hole at some

---

[8]According to Starcher, additional information pointed to Seth's involvement. Multiple people confirmed that Beach and Seth were close companions. Several people also told law enforcement that Seth had made comments about having killed Beach. One of those was Sara Douvres, Beach's girlfriend at the time of his disappearance. When Deputy Cole interviewed her, Douvres told him Seth had stated he had "taken care of David Beach permanently, because David Beach stole from him." (Dkt. No. 71-3 at 12). Deputy Cole also interviewed Anna Sullo, who claimed Seth had told her that he had killed Beach. Id. Sullo further provided Deputy Cole with the names of other people who claimed to have heard Seth say that he had killed Beach. Id.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

point.[9] Finally, officers recovered a gun in the Denmark home

matching Cottrill's description of the murder weapon.[10]

Based on the totality of the information known to him at that

time, Starcher filled out a criminal complaint against Denmark,

charging her with aiding and abetting in the kidnaping of Beach.

(Dkt. No. 77-1).[11] He presented his complaint to a local magistrate

on March 12, 2010.    After reviewing the information in the

complaint, the magistrate determined that there was probable cause

to arrest Denmark, and issued a warrant for her arrest. (Dkt. No.

77-6 at 25). Starcher arrested Denmark later that day.[12] She was

---

[9]After taking samples with him, Dr. Owsley later verified his
initial findings and relayed that information to Starcher via
telephone sometime between February 23, 2010, and March 31, 2010.
(Dkt. No. 77-6 at 9).

[10]The weapon was not found in the white plastic pipe where
Cottrill claimed Seth hid it. In her statement, Cottrill predicted,
that, based on the family's history, they would likely move the
gun. (Dkt. No. 77-12 at 14).

[11]A criminal complaint is a sworn document that serves as the
officer's affidavit for purposes of obtaining a warrant. For
purposes of this Memorandum Opinion and Order, the terms "criminal
complaint" and "affidavit" are interchangeable.

[12]In her brief, Denmark makes multiple references to the
roughly forty-five minute, un-_Mirandized_ conversation between
Starcher and her while he was transporting her to the station
following her arrest. Indeed, a recording of the conversation is
attached to Denmark's response to Starcher's motion for summary
judgment. _See_ Dkt. Nos. 77 and 82. For reasons discussed later in
this memorandum opinion, however, any conversations that occurred
after Starcher sought the warrant are not relevant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

arraigned via video the following day and, on March 18, 2010,
waived her preliminary hearing.

Denmark remained incarcerated from March 12, 2010, until she
was able to post a $100,000 bond on June 10, 2010. (Dkt. No. 77 at
10). Thereafter, the circuit court placed her on home confinement,
but forbade her from residing with her husband. (Dkt. No. 77 at
10). Around September 27, 2010, the court released Denmark from
home confinement, but still barred any contact with her husband.
(Dkt. No. 77 at 10). Finally, on April 11, 2011, the court
dismissed the charges against Denmark without prejudice. (Dkt. No.
77 at 11).

Less than a month later, on May 3, 2011, an arrest warrant was
issued for Seth, who was then incarcerated on an unrelated state
criminal charge.[13] (Dkt. Nos. 77 at 11; 77-6 at 12). Almost two
years later, on April 17, 2013, Seth signed a written plea
agreement, in which he agreed to plead no contest to second degree
murder regarding the killing of Beach. (Dkt. No. 71-10). Notably,
the written plea agreement stated, in pertinent part:

---

[13] Seth's incarceration perhaps allowed Cottrill to feel safe
enough to finally come forward. In her statement, she made it clear
that she was worried about retribution by Seth: "So if I do this
there's no way he can get to me and my daughter?" (Dkt. No. 77-12
at 3).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

> [T]he State agrees not to prosecute any crimes, felonies
> or misdemeanors, against William Anthony Denmark (the
> Defendant's Father), Jackie L. Denmark (the Defendant's
> Mother), and Arneil Denmark Parsons (the Defendant's
> sister) for the following:
>
> > a.    The death and/or disappearance of David Wayne
> >       Beech.
>
> > . . .
>
> > c.    Any crimes relating to Veronica "Nikki"
> >       Cottrell occurring prior to the entry of this
> >       plea agreement.

(Dkt. No. 71-10 at 6).[14] In the agreement Seth also acknowledged

that "no person has used any threats, force, pressure, or

intimidation to get him to plead no contest . . . ." (Dkt. No. 77-

10 at 5).

**B.    Procedural Background**

On March 31, 2014, pursuant to 42 U.S.C. § 1983, Denmark filed

suit against Starcher in his official capacity, alleging that,

based on Starcher's alleged abuse of process, he had violated her

Fourth, Fifth, and Fourteenth amendment rights against unreasonable

search and seizure. (Dkt. No. 1 at 2).

Starcher moved to dismiss the complaint, because Denmark had

---

[14]Plaintiff notes that this is the second plea agreement
between Seth and the State. The first contained similar language
exonerating plaintiff from any criminal act related the killing of
Beech. That first plea agreement was rejected by the judge,
however, and the language was different in the second plea
agreement. (Dkt. No. 77 at 11).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

only sued him in his official capacity. (Dkt. No. 5). Denmark opposed the motion to dismiss and also moved to amend her complaint. (Dkt. No. 9). The Court granted her motion to amend, and consequently dismissed Starcher's motion to dismiss the original complaint as moot. (Dkt. No. 11). The amended complaint sued Starcher in both his personal and official capacities; otherwise the allegations of constitutional violations remained the same as those in the original complaint. Id.

Starcher moved to dismiss the amended complaint, claiming that (1) any claims against him in his official capacity failed because they essentially were claims against the state, which is immune from suit under § 1983; and (2) the statute of limitations had run on any claims against him in his individual capacity. (Dkt. No. 15). Finding that Denmark's § 1983 claim against Starcher in his official capacity failed as a matter of law, the Court dismissed that claim. However, it allowed the § 1983 claim against Starcher in his individual capacity to proceed, determining that it was not time-barred, but related back to Denmark's original complaint, which had been timely filed. (Dkt. No. 22).

On January 8, 2016, both parties filed competing motions for summary judgment. (Dkt. Nos. 70 and 72). Starcher contends that he

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING THE CASE WITH PREJUDICE**

is entitled to qualified immunity, as probable cause existed to arrest Denmark, and his actions were objectively reasonable. He further asserts that Denmark's punitive damages claim fails as a matter of law. Starcher's motion is fully briefed and ripe for review.

Denmark's motion for partial summary judgment is not so straightforward. Although asserting that she is seeking partial summary judgment based on a "discrete issue," (dkt. No. 85 at 1), in actuality, her motion encompasses the entirety of her complaint, the gravamen of which is that Starcher had no probable cause to arrest her and therefore is not entitled to qualified immunity.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir.2000).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING THE CASE WITH PREJUDICE**

The Court must avoid weighing the evidence or determining the truth
and limit its inquiry solely to a determination of whether genuine
issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the
Court of the basis for the motion and of establishing the
nonexistence of genuine issues of fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). Once the moving party has made the
necessary showing, the nonmoving party "must set forth specific
facts showing that there is a genuine issue for trial." Anderson,
477 U.S. at 256 (internal quotation marks and citation omitted).
The "mere existence of a scintilla of evidence" favoring the
nonmoving party will not prevent the entry of summary judgment; the
evidence must be such that a rational trier of fact could
reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

In order to establish a claim under 42 U.S.C. § 1983, Denmark
must establish that, while acting under color of state law,
Starcher deprived her of rights, privileges or immunities secured
by the Constitution or laws of the United States. Crosby v. City of
Gastonia, 635 F.3d 634, 639 (4th Cir. 2011).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING THE CASE WITH PREJUDICE**

In her complaint, Denmark alleges that Starcher "violated
[her] civil and constitutional rights . . . under the Fourth, Fifth
and Fourteenth Amendments, or each of these, along with violating
[Denmark's] civil rights identified pursuant to 42 U.S.C. § 1983,
and finally amounted to an objectively unreasonable seizure of
[Denmark] by abusing criminal process or otherwise acting in a
malicious manner . . . ." (Dkt. No. 12 at 7). Notwithstanding this
broad claim, in her response to Starcher's motion for summary
judgment, Denmark emphasizes that "[t]he gravamen of [her] section
1983 claim against Cpl. Starcher is that he had no probable cause,
as set forth in defendants 'Criminal Complaint', to arrest her for
the felony charge of aiding and abetting in the kidnaping . . . ."
(Dkt. No. 77 at 13). Accordingly, Denmark's § 1983 claim is "most
appropriately evaluated under the Fourth Amendment's right to be
free from unreasonable search and seizure." Davis v. City of
Shinnston, 2013 WL 4805814, at *3 (N.D.W.Va. Sept. 3, 2013).

The Fourth Circuit recognizes two distinct causes of action
under § 1983 for violations of an individual's Fourth Amendment
right against unreasonable seizure. See Brooks v. Winston-Salem, 85
F .3d 178, 181–82 (4th Cir. 1996) (citing Heck v. Humphrey, 512
U.S. 477, 484 (1994)). The first is a cause of action for false or

16

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING THE CASE WITH PREJUDICE**

unlawful arrest or arrest in the absence of legal process. See
Wallace v. Kato, 549 U.S. 384, 389 (2007). An individual arrested
pursuant to a facially valid warrant, however, has no grounds to
support this cause of action. See, e.g., Bellamy v. Wells, 548
F.Supp .2d 234, 237 (W.D.Va. 2008); Porterfield v. Lott, 156 F.3d
563, 568 (4th Cir. 1998) ("a claim for false arrest may be
considered only when no arrest warrant has been obtained"); see
also Dorn v. Town of Prosperity, 375 F. App'x 284, 286 (4th Cir.
2010) ("The distinction between malicious prosecution and false
arrest ... is whether the arrest was made pursuant to a warrant.").

The second cause of action lies when there is a violation of
an individual's Fourth Amendment right against unreasonable
seizures because he or she is subjected to a "malicious
prosecution" or an abuse of judicial process. See Brooks, 85 F.3d
at 182 ("[A]llegations that an arrest made pursuant to a warrant
was not supported by probable cause, or claims seeking damages for
the period after legal process issued, are analogous to the
common-law tort of malicious prosecution."). Fourth Circuit
precedent, however, holds:

> [T]here is no such thing as a '§ 1983 malicious
> prosecution claim.' What we termed a 'malicious
> prosecution' claim in Brooks is simply a claim founded on
> a Fourth Amendment seizure that incorporates elements of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING THE CASE WITH PREJUDICE**

> the analogous common law tort of malicious
> prosecution—specifically, the requirement that the prior
> proceeding terminate favorable to the plaintiff.

Snider v. Lee, 584 F.3d 193, 199 (4th Cir. 2009) (quoting Lambert

v. Williams, 223 F.3d 257, 262 (4th Cir. 2000)). Nevertheless, the

Fourth Circuit, as well as other lower courts, continue to identify

these claims as "malicious prosecution" claims. See Evans v.

Chalmers, 703 F.3d 636 (4th Cir. 2012); Martin v. Conner, 882

F.Supp.2d 820 (D.Md. 2012); Davis v. Back, No. 3:09CV557, 2010 WL

1779982, (E.D.Va. Apr. 29, 2010).

Here, Denmark does not dispute that she was arrested pursuant

to a facially valid warrant. Given that, she may only pursue a §

1983 claim for "malicious prosecution" under the Fourth Amendment.

In order to prevail on such a claim, "a plaintiff must allege that

the defendant (1) caused (2) a seizure of the plaintiff pursuant to

legal process unsupported by probable cause, and (3) criminal

proceedings terminated in plaintiff's favor." Chalmers, 703 F.3d at

647 (citing Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)).

As explained below, Denmark's allegations fall far short of the

mark.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND DISMISSING CASE WITH PREJUDICE**

## IV. LEGAL ANALYSIS

### A. Denmark Cannot Establish that the Criminal Proceedings Terminated in her Favor

Under <u>Chalmers</u>, in order to succeed on her § 1983 claim for malicious prosecution, Denmark must establish that the criminal proceedings terminated in her favor. <u>Chalmers</u>, 703 F.3d at 647; <u>see also</u> <u>Heck</u>, 512 U.S. at 484 (noting that favorable termination is an essential element of a § 1983 malicious prosecution claim). Although the parties never addressed this issue in their briefs, from the facts in the case it is clear that Denmark cannot establish that the criminal proceedings involving Beach's disappearance and death terminated in her favor.

Courts have consistently held that "'only terminations that indicate that the accused is innocent ought to be considered favorable.'" <u>Uboh v. Reno</u>, 141 F.3d 1000, 1004 (11th Cir. 1998) (quoting <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3rd Cir.1996)).[15]

---

[15]<u>See also</u> <u>Taylor v. Gregg</u>, 36 F.3d 453, 456 (5th Cir. 1994) (agreeing with the reasoning of the Second Circuit, holding "that proceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty"); <u>Singleton v. City of New York</u>, 632 F.2d 185, 193 (2nd Cir. 1980) (same); <u>Evans v. Ball</u>, 168 F.3d 856, 859 (5th Cir. 1999) ("The rule in this circuit, then, is that proceedings terminate in favor of the accused only when they affirmatively indicate that he is not guilty."); <u>Malcomb v. McKean</u>, 535 Fed. Appx. 184, 187 (3d Cir. 2013) ("[T]he prior disposition of the criminal case must show 'the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

Notably, "'[t]he plaintiff has the burden of proving a favorable termination.'" <u>Wilkins v. DeReyes</u>, 528 F.3d 790, 802-03 (10th Cir. 2008) (quoting <u>Washington v. Summerville</u>, 127 F.3d 552, 557 (7th Cir. 1997)).

Cases that do not terminate in a manner indicating the innocence of the defendant often fail to satisfy the favorable termination requirement. For example, pre-trial diversion is "not [a] termination in the defendant's favor, even if all criminal charges are dismissed." <u>Evans v. Ball</u>, 168 F.3d 856, 859 (5th Cir. 1999) (citing <u>Taylor v. Gregg</u>, 36 F.3d 453, 456 (5th Cir. 1994)). Nor is there a favorable termination "where the stated basis for the dismissal of criminal charges has been 'in the interests of justice.'" <u>Uboh</u>, 141 F.3d at 1004 (citing <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116 (2nd Cir. 1995); <u>Hygh v. Jacobs</u>, 961 F.2d 359, 368 (2nd Cir. 1992)).

Multiple courts have addressed whether a prosecutor's decision to abandon criminal charges against a defendant equates to a favorable termination for purpose of maintaining a malicious

---

innocence of the accused.'" (quoting <u>Heck</u>, 512 U.S. at 484));
<u>Ohnemus v. Thompson</u>, 594 Fed. Appx. 864, 867 (6th Cir. 2014) ("The termination must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him. (citation omitted)).

prosecution claim. "In the civil malicious prosecution context, the majority rule is that a criminal proceeding has been terminated in favor of the defendant when a prosecutor formally abandons the proceedings via a nolle prosequi, unless he abandons the prosecution for reasons not indicative of the defendant's innocence." <u>Summerville</u>, 127 F.3d at 557. Nevertheless, "not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." <u>Donahue v. Gavin</u>, 280 F.3d 371, 383 (3d Cir. 2002) (citing <u>Hilfirty</u>, 91 F.3d at 579). Indeed, abandonment of a prosecution is only a favorable termination "when [its] final disposition is such as to indicate the innocence of the accused." <u>Donahue</u>, 280 F.3d at 383.

In the context of abandoned charges, "[t]he plaintiff meets [her] burden of proof only when [s]he establishes that the nolle prosequi was entered for reasons consistent with [her] innocence." <u>Summerville</u>, 127 F.3d at 557. "The circumstances surrounding the cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking." <u>Summerville</u>, 127 F.3d at 557 (citation omitted). Some courts have gone so far as to declare that "a § 1983 malicious prosecution plaintiff must be innocent of the crime charged in the

underlying prosecution." <u>Donahue</u>, 280 F.3d at 383 (internal quotations omitted).

Consequently, "bare [abandonment] without more is not indicative of innocence." <u>Wilkins</u>, 528 F.3d at 803 (internal quotations and citations omitted). The Court "'must look past the form or title of the disposition and examine the circumstances surrounding the entry of the nolle prosequi.'" <u>Id.</u> (quoting <u>Logan v. Caterpillar, Inc.</u>, 246 F.3d 912, 925 (7th Cir. 2001)).

Denmark has failed to meet her burden of establishing that the prosecutor abandoned her prosecution for reasons consistent with her innocence. Her complaint simply notes that the circuit court judge dismissed her charges without prejudice. The dismissal order (dkt. no. 71-9 at 2) notes that Denmark was released pursuant to W. Va. Code § 62-2-12, which provides:

> A person in jail, on a criminal charge, shall be discharged from imprisonment if he be not indicted before the end of the second term of the court, at which he is held to answer, unless it appear to the court that material witnesses for the State have been enticed or kept away, or are prevented from attendance by sickness or inevitable accident, and except also that, when a person in jail, on a charge of having committed an indictable offense, is not indicted by reason of his insanity at the time of committing the act, the grand jury shall certify that fact to the court; whereupon the court may order him to be sent to a state hospital for the insane, or to be discharged.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE

Both parties stipulated that Denmark "has been in a bound over status through more than two full court terms and not indicted and that this delay has not been caused by any of the statutory exceptions." (Dkt. No. 71-9 at 2). Based on this, the court granted the motion and dismissed the case without prejudice.

This hardly suffices to meet Denmark's burden. First, a dismissal without prejudice pursuant to the state statute differs from a unilateral decision by a prosecutor to abandon criminal charges. Moreover, a dismissal without prejudice cannot possibly speak to Denmark's innocence.[16] The Court therefore is left to guess as to why Denmark was not indicted during the two terms of court. It need not speculate, however, because the burden is on Denmark to provide evidence that the criminal proceedings terminated in her favor due either to lack of evidence to prosecute or her actual innocence. This she has failed to do. Accordingly, as a matter of law, the Court concludes that Denmark's malicious prosecution claim fails because she has not established that the prosecution terminated in her favor, an essential element of a § 1983 malicious

---

[16]Notably, Denmark' complaint alleges that, even after the criminal charges were dismissed without prejudice, she was under "constant threat of a subsequent arrest and detention," until the charges were dropped with prejudice pursuant to the plea agreement with her son, Seth. (Dkt. No. 12 at 6).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

prosecution claim. See Chalmers, 703 F.3d at 647; Heck, 512 U.S. at 484.

**B.    Starcher's Motion for Summary Judgment**

Turning to the arguments actually briefed by the parties, Starcher first contends that there was probable cause to support his application for the arrest warrant, and that Denmark's constitutional rights were not violated. He further argues that, even if probable cause was lacking, he is entitled to qualified immunity because his application for the warrant was objectively reasonable.

Under the defense of qualified immunity, individual officials performing discretionary functions are immune from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Covey v. Assessor of Ohio Cty., 777 F.3d 186, 195 (4th Cir. 2015). The qualified immunity doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (2009).

24

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." <u>Willingham v. Crooke</u>, 412 F.3d 553, 558-59 (4th Cir. 2005) (internal quotations omitted). "Ordinarily, the question of qualified immunity should be decided at the summary judgment stage." <u>Id.</u> at 558-59 (citations omitted). Moreover, "[a]t the summary judgment stage, once we have viewed the evidence in the light most favorable to the nonmovant, the question of whether the officer's actions were reasonable is a question of pure law." <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (citing <u>Scott</u>, 550 U.S. at 381 n. 8) (en banc).

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." <u>Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst</u>, 810 F.3d 892, 898 (4th Cir. 2016) (quoting <u>Henry</u>, 652 F.3d at 531). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). Society forgives officers for reasonable errors because "'officials should not err always on the side of caution' for fear of being sued." <u>Id.</u> (quoting <u>Davis v. Scherer</u>, 468 U.S. 183, 195 (1984)).

25

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

Finally, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson, 555 U.S. at 231 (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Indeed, "[q]ualified immunity is meant to protect against liability for 'bad guesses in gray areas.'" Bellotte v. Edwards, 629 F.3d 415, 424 (4th Cir. 2011) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)).

In Saucier v. Katz, the Supreme Court of the United States laid out a two-step sequential analysis for courts to apply when determining whether an official is entitled to qualified immunity. 533 U.S. 194, 200-01 (2001). The first part of the analysis asks whether the alleged facts, when taken in the light most favorable to the injured party, establish that the conduct at issue violated a constitutional right. Id. at 201. The second question is "whether the right was clearly established." Id. at 201.

In Pearson v. Callahan, the Supreme Court concluded that the mandatory sequential aspect of Saucier was unnecessarily rigid.

> The judges of the district courts and the courts of
> appeals should be permitted to exercise their sound
> discretion in deciding which of the two prongs of the
> qualified immunity analysis should be addressed first in

26

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

light of the circumstances in the particular case at hand.

Pearson, 555 U.S. at 236. Accordingly, courts have discretion to determine which prong to address first; a defendant meeting either prong is entitled to summary judgment. Id.

**1)  Starcher is Entitled to Qualified Immunity Because his Application for the Warrant was Objectively Reasonable**

Despite Denmark's assertions otherwise, the facts, when viewed in the light most favorable to her, establish that Starcher's conduct did not violate any of Denmark's constitutional rights.

Clearly, the "Fourth Amendment prohibits law enforcement from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." Miller v. Prince George's Cty. Md., 475 F.3d 621, 627 (2007) (quotations omitted). Denmark contends that her seizure was unreasonable because it stemmed from a warrant based on Starcher's dishonest, or at least misleading, criminal complaint.

In order to succeed on this claim, Denmark must "prove that [Starcher] deliberately or with a reckless disregard for the truth made material false statements in his affidavit, or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit

27

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

misleading." <u>Miller</u>, 475 F.3d at 627 (internal quotations and citations omitted). Yet, "a plaintiff's 'allegations of negligence or innocent mistake' by a police officer will not provide a basis for a constitutional violation." <u>Id.</u> (quoting <u>Franks v. Delaware</u>, 438 U.S. 154 (1978)).

In order to establish reckless disregard, Denmark must prove that Starcher was highly aware his statement was probably false; that is, in light of the evidence, he "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." <u>Id.</u> (quoting <u>Wilson v. Russo</u>, 212 F.3d 781, 788 (3d Cir. 2000)). To establish reckless disregard by omission, however, Denmark must demonstrate that Starcher "failed to inform the judicial officer of facts [he] knew would negate probable cause." <u>Id.</u> (quotation omitted).

Furthermore, in order to reach the level of a constitutional violation, any false statements or omissions must be "material." <u>See</u> <u>id.</u> at 628. Determining materiality requires the court to "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." <u>Id.</u> (citing <u>Wilson</u>, 212

F.3d at 789. Here, if probable cause still exists after the court "corrects" the affidavit, Starcher cannot be held liable. Id.

        *a.   False Statements or Omissions*

Nowhere does Denmark's complaint allege that the statements contained in Starcher's criminal complaint were deliberately false, intentionally misleading, or presented with reckless disregard as to the statement's veracity. (Dkt. No. 12 at 5). Rather, she repeatedly claims that Starcher sought the warrant solely "to accomplish the collateral purpose/objective" of pressuring Seth into admitting his involvement with Beach's disappearance.[17] Id. at ¶¶ 16, 23, 24, 25; see also Dkt. No. 7 at 1.

In her response to Starcher's motion, Denmark specifies the only facts alleged in the criminal complaint that might support probable cause, and then discusses why they fail to do so.

> 1)   "[A]fter the hole was dug, the defendant photographed William Seth Denmark and David Wayne Beach as they sprayed mud off of each other."

According to Denmark, this statement establishes nothing more than her proximity to the boys. (Dkt. No. 77 at 15). That is

---

[17]The Court need not address the propriety of using Denmark's arrest for a "collateral objective/purpose" because Denmark did not brief how that issue might be relevant to the issue of whether probable cause existed to apply for the warrant.

correct, but it also could confirm that Denmark knew the boys had in fact dug a hole. Nonetheless, the statement is not false or misleading, and it is hardly material.

> 2)    "The witness further stated that the defendant was spoken to by William Seth Denmark and commented by having a negative reaction to the statement made by William Seth Denmark."

According to Denmark, this statement is too vague, lacking even the actual words used or a description of the context, and leaves the magistrate to speculate. (Dkt. No. 77 at 15). Again, there is no assertion that this is a false or misleading statement. Further, the magistrate was entitled to use this information to draw reasonable inferences based on the totality of the circumstances.

> 3)    "The assistance was being demanded by a display of a pistol [by William Seth Denmark] and an order for Veronica Cottrell to obtain a flashlight. The defendant [Jackie Denmark] made a statement that Veronica Cottrell should not be involved. Veronica Cottrell was then ordered by William Seth Denmark, to go with him and assist him."

According to Denmark, this statement "should clearly communicate the fact that Jackie Denmark was attempting to shield Veronica Cottrell from possibly viewing a horrific crime which she may have suspected her son may have committed. The same crime which she previously had sought to stop her son from committing." (Dkt. No. 77 at 15).

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND DISMISSING CASE WITH PREJUDICE

Denmark never asserts that this statement is false. Rather, she contends that, because the magistrate was left to speculate as to the level of her involvement, it is misleading. But the fact that a statement allows a magistrate to draw reasonable inferences does not make it purposefully misleading. In point of fact, as even Denmark acknowledges, the statement "clearly communicates" what Cottrill saw and understood to be happening as she recounted it to the deputies. Starcher and the magistrate certainly could understand the same thing to have happened based on the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983).

> 4)  "On February 23, 2010 this officer [sic], was present when a search was conducted of the Denmark residence and surrounding property, located along Beach Road in Calhoun County. All information obtained from Veronica Cottrell (Nikki) on February 2, 2010 was validated by the evidence found at the Denmark residence."

The crux of Denmark's objection to this statement is that Starcher did not validate all of the information he obtained from Cottrill. (Dkt. No. 77 at 16). Specifically, she notes (1) the gun that was allegedly hidden in the plastic pipe was not actually found there, and (2) no forensic evidence "submitted" pursuant to the search was available to Starcher on the date that he sought and

31

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

executed the warrant for Denmark's arrest. Finally, Denmark avers that there are no facts alleged that establish a kidnaping, or that she was an accessory before or after any kidnaping.

Putting aside whether the word "all" could be perceived as misleading, the more pertinent question, which the Court will address later in this opinion, is whether the statement is material.

5)    "David Wayne Beach, III has yet to be located."

Denmark asserts that, if Cottrill's statement is credible, Starcher had to believe that Beach was dead. Since no facts in the complaint alleged a kidnaping, Denmark contends that she could not be an accessory before or after a nonexistent kidnaping. (Dkt. No. 77 at 16).

The totality of the allegations in Starcher's criminal complaint clearly indicate his belief that Beach had been murdered, not kidnaped. The statement that Beach "has yet to be located," thus, could be viewed as misleading, any confusion due solely to Starcher's decision to cite the kidnaping statute rather than the murder statute.

6)    "Through investigation it has been learned that the defendant [Jackie Denmark] knows the location of David Wayne Beach and that the defendant is an active participant in concealing the whereabouts of David Wayne Beach, III."

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

Denmark claims that this statement is false because, at the time of the warrant, there was no evidence that she knew the location of Beach or his remains. (Dkt. No. 77 at 16). Denmark points to Cottrill's allegations that Seth and his father had moved Beach's body and burned it. She reasons that, even if at some early point she had known about Beach's murder on the property and where his body was, as of March 12, 2012, when Starcher arrested her, she no longer knew where his remains were.

The Court agrees that this statement is false, whether negligently or intentionally so, and could very well have misled the magistrate. While it is possible that Denmark learned of the location of Beach's remains from her husband or son, Starcher had no evidence to support such an assertion.

> b.   *Materialty*

As the previous discussion establishes, there are two statements in Starcher's criminal complaint that could be characterized as either false or misleading. Whether either is material, however, is another matter. Id. (citing Wilson, 212 F.3d at 789.

In pertinent part, Starcher's complaint alleged:

1)    "On February 23, 2010 this officer, was present when a search was conducted of the Denmark residence and

> surrounding property, located along Beach Road in Calhoun
> County. All information obtained from Veronica Cottrell
> (Nikki) on February 2, 2010 was validated by the evidence
> found at the Denmark residence."

Excising "all" from this statement establishes the immateriality of the word. The statement that remains, claiming that "information obtained from Veronica Cottrell (Nikki) on February 2, 2010 was validated by the evidence found at the Denmark residence," is a true statement. Although probable cause is generally not established solely by a witness's claims, corroboration through police efforts lends those statements substantially more weight in the probable cause analysis. See Gates, 462 U.S. 213, 241-45. ("It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." (internal quotations omitted)).

Further, the fact that Cottrill was correct about some of her claims strengthened her veracity, lending greater credence to her other statements. Id. Gates, 462 U.S. at 244 ("'Because an informant is right about some things, he is more probably right about other facts . . . .'" (quoting Spinelli v. United States, 393 U.S. 410 (1969))). In other words, the fact that Starcher was able

34

to corroborate some of Cottrill's statements bolstered his belief in her other claims. Accordingly, even when "all" is excised, the criminal complaint still provides probable cause that Denmark committed a crime.

> 2) "Through investigation it has been learned that the defendant [Jackie Denmark] knows the location of David Wayne Beach and that the defendant is an active participant in concealing the whereabouts of David Wayne Beach, III."

This statement also is not material. Denmark contends that she could not possibly have concealed the whereabouts of Beach's remains because she had no idea where they were after Seth and his father moved them. Nevertheless, even when this entire statement is removed from the criminal complaint, sufficient evidence of probable cause that Denmark committed a crime remains. Indeed, Starcher provided enough evidence in his criminal complaint to establish probable cause that Denmark aided and abetted Seth in the crime of murder. Whether, at some later time, she no longer knew the location of Beach's remains does not negate her culpability. Accordingly, even when the entirety of this statement is excised, the criminal complaint still provides probable cause that Denmark committed a crime.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

> c. *Starcher's Decision to Use the Kidnaping Statute
> Rather than the Murder Statute*

Starcher's criminal complaint inexplicably cites the statute applicable to aiding and abetting kidnaping, as well as its relevant statutory language. According to Denmark, as no probable cause existed to support an aiding and abetting kidnaping charge, there was no probable cause to arrest her. (Dkt. No. 77-1).

Why Starcher, the prosecutor, and the magistrate, failed to cite the relevant statute of aiding and abetting murder is difficult to understand. Nevertheless, such a "'technical error does not automatically invalidate the warrant,'" or Starcher's belief that probable cause existed to arrest Denmark. U.S. v. Cox, 553 Fed. Appx. 123, 128 (3rd Cir. 2014) (quoting United States v. Carter, 756 F.2d 310, 313 (3d Cir. 1985)); see also U.S. v. English, 400 F.3d 273, 276 (5th Cir. 2005). Ultimately, when a court considers mistakes in warrants "[t]he true inquiry ... is ... whether there has been such a variance as to affect the substantial rights of the accused." Cox, 553 Fed. Appx. at 128 (internal quotation and citation omitted).

While there is no case on all fours with the facts here, several are instructive. In U.S. v. Meek, the Ninth Circuit Court of Appeals considered a case in which the officer's affidavit cited

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

a statute that differed from that in the actual warrant. 366 F.3d

705, 711 (9th Cir. 2004). The court upheld the validity of the

warrant, stating:

> Because the affidavit established probable cause as to <u>a
> violation</u> of California law and the items sought under
> the warrant corresponded to that probable cause
> determination, the statutory variance in the affidavit is
> not fatal to the warrant's validity.

<u>Id.</u> (emphasis added) (citing <u>United States v. Koyomejian</u>, 970 F.2d

536, 548 (9th Cir. 1992) (Kozinski, J., concurring) ("I am aware of

no constitutional requirement that an applicant for a warrant

specify, and the judge determine, the precise statute violated; all

authority is to the contrary.").

In <u>Skoog v. Clackamas County</u>, 469 F.3d 1221, 1231 (9th Cir.

2006), the Ninth Circuit reaffirmed its reasoning in <u>Meek</u>, There,

it again considered a discrepancy between the statute listed in the

officer's affidavit and the one cited in the actual warrant,

holding: "[A]'statutory variance in the affidavit is not fatal to

the warrant's validity'" as long as "'the affidavit established

probable cause [] and the items sought under the warrant

corresponded to that probable cause determination.'" <u>Id.</u> (brackets

in original) (quoting <u>Meek</u>, 366 F.3d at 712).

In <u>Hendricks v. Sheriff, Collier County, Florida</u>, 492 Fed.

Appx. 90, 93 (11th Cir. 2012), the Eleventh Circuit Court of

Appeals addressed a case involving defendants charged with two crimes, "robbery - armed with other weapon" and "felony battery." The defendants claimed that their arrests were not supported by probable cause because there was "no evidence of a serious harm done to either victim that would rise to the level of felony battery." Id. at 94. The court, however, concluded that the officer had probable cause to arrest for some offense:

> . . . Appellants' arguments make no difference to a probable cause analysis. An officer's subjective reliance on an offense for which no probable cause exists does not make an arrest faulty where there is actually probable cause to support some other offense.

Hendricks, 492 Fed. Appx. at 94 (emphasis added) (internal quotations and citations omitted).

In the instant case, probable cause existed that Denmark had broken a law, even if not the one Starcher cited in his criminal complaint. There was sufficient evidence to find probable cause for a crime — aiding and abetting murder — and the statements contained in the criminal complaint clearly corresponded to that crime. Indeed, nothing in the criminal complaint suggested any crime other than the murder of Beach. This was abundantly clear, even to the magistrate.

Despite citing the statute for aiding and abetting kidnaping rather than for aiding and abetting murder, there was not "such a

38

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

variance as to affect the substantial rights of [Denmark]" in Starcher's criminal complaint. <u>Cox</u>, 553 Fed. Appx. at 128. Both Denmark and her attorney had access to the criminal complaint and arrest warrant; they also were on notice of the specifics of the accusations against her, and, despite being in a position to defend against them, did not object.

Indeed, although Denmark had the opportunity to challenge the validity of the criminal complaint at her preliminary hearing, she chose to waive that hearing.[18] Furthermore, at no point, whether during her incarceration, home confinement, or release on bond, did Denmark ever seek a <u>Franks</u> hearing.[19]

At the bottom, facts establish that probable cause existed to arrest Denmark for a crime, even if not the specific crime cited in the criminal complaint.

---

[18]Current counsel for Denmark, who was not her attorney during the criminal proceedings, characterizes the waiver of the preliminary hearing as "unexplainable." (Dkt. No. 77 at 10).

[19]"The purpose of a <u>Franks</u> hearing is to determine whether, but for the inclusion of intentional or reckless misstatements by the affiant, an affidavit would not support a finding of probable cause." <u>U.S. v. Williams</u>, 526 Fed. Appx. 312, 314 (4th Cir. 2013) (citation omitted); <u>see also</u>, <u>Gomez v. Atkins</u>, 296 F.3d 253, 265 (4th Cir. 2002) (noting that a "probable-cause hearing, however, afford[s] [a defendant] a full opportunity to litigate, in an adversary proceeding before an impartial judge, the issue of probable cause").

### d.  Aiding and Abetting

The State of West Virginia bifurcates the act of aiding and abetting, also known as being an accessory in the commission of a crime, into two categories:

> At common law the parties to a felony were divided into principals and accessories. The principals were divided into: (1) principals in the first degree who actually perpetrated the act; and, (2) principals in the second degree, known under early common law analysis as accessories at the fact, who were actually or constructively present at the scene of the crime and who aided or abetted directly or indirectly. The accessories were divided into: (A) accessories before the fact who conspired with the perpetrator but were not present during the commission of the crime; and, (B) accessories after the fact who rendered assistance after the crime was completed.

State v. Bradford, 484 S.E.2d 221, 228-29 (W.Va. 1997) (quoting State v. Perry, 273 S.E.2d 346, 349 (W.Va. 1980)). Furthermore, "[t]hree things are requisite to constitute one an accessory after the fact: (1) The felony must be completed; (2) he must know that the felon is guilty; and (3) he must receive, relieve, comfort or assist him." Id. at 229 (quoting 1A M.J. Accomplices and Accessories § 5 (1993)).

Importantly, a defendant's "presen[ce] at the time and place the crime was committed is generally acknowledged to be a factor to be considered, . . . along with other circumstances, such as the

40

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime." Id. at 823 (citations omitted). Even "[a]n act of relatively slight importance may render the defendant criminally liable as a participant in the offense." Id.

Denmark could be considered an accessory before the fact based on the allegations in the criminal complaint. Nevertheless, based on his allegations, it is clear that Starcher believed Denmark was at least an accessory after the fact. He had probable cause to believe she had been well aware of what was happening, had exercised willful ignorance, had supported Seth through her silence and inaction, and had assisted him by directing him to hide the gun.

Denmark also knew the boys had been up the hill, digging a hole. She was aware that Seth had taken the gun from her bedroom, and knew, because he had told her so, that he intended to shoot Beach.[20] She became distraught when she heard the gunshots. She saw Seth return, covered in mud, with Beach nowhere to be seen. She

---

[20]Although Denmark did say "no, no, no," this was more a sign of her exasperation, and not an affirmative step to stop Seth's actions. There is no evidence that she ever attempted to physically prevent, scold, warn, or even threaten to call anyone in an effort to prevent him from acting.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

observed Seth threaten Cottrill with a gun when she refused to accompany him back up the hill to hold a flashlight. When Seth and Cottrill returned to the house after burying Beach, she locked herself in her room, stating "I don't want to see."[21] Finally, after someone came to the house asking about Beach, she told her son to get rid of the gun. She then remained silent about all these events for over four years.

In the Court's opinion, Starcher acted in an objectively reasonable manner when he determined that there was probable cause to believe Denmark had aided and abetted Seth in the crime of murder. She did so through her acquiescence in his actions, her failure to act in any way to prevent Beach's murder, her instructions to him to get rid of the weapon, and her continued silence after the fact.

> *e.   Probable  Cause  Supported  Starcher's  Criminal
> Complaint Seeking Denmark's Arrest*

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has

---

[21]In addition, Cottrill told Starcher that the grave site was within eyesight of the house.

committed ... an offense." Cahaly v. Larosa, 796 F.3d 399, 407 (4th Cir. 2015) (quotation omitted). A court must look at the totality of the circumstances when determining whether probable cause exists. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (citing United States v. Garcia, 848 F.2d 58, 59-60 (4th Cir. 1988)).

"[I]n the arrest context, the question is whether the totality of the circumstances indicate to a reasonable person that a 'suspect has committed, is committing, or is about to commit' a crime." U.S. v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). Probable cause is a "commonsense, nontechnical concept[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Ornelas v. U.S., 517 U.S. 690, 695 (1996) (quoting Gates, 462 U.S. at 231).

The officer need not possess enough evidence to support a conviction; rather, there "need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." Brown, 278 F.3d at 367-68 (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)); see also Gates, 462 U.S. at 231 ("[O]nly the probability, not a prima facie showing, of criminal activity is the standard of probable cause."). Not only

does an officer not need proof beyond a reasonable doubt, there need not even be a preponderance of the evidence to support an officer's belief that probable cause exists. <u>Humphries</u>, 372 F.3d at 660. Indeed, the "probable-cause standard does not require that the officer's belief be more likely true than false." <u>Id.</u> at 660 (citing <u>United States v. Jones</u>, 31 F.3d 1304, 1313 (4th Cir. 1994)).

Even when viewing the facts in the light most favorable to Denmark, it is beyond argument that Starcher had an objectively reasonable belief that she had committed a crime. This remains true even after "correcting" Starcher's criminal complaint to excise any false or misleading statements. Starcher had the statement of Cottrill, a young woman who knew the Denmark family intimately, and he had no cause to believe that she was lying. In fact, he knew that, at great risk to herself, she had come forward with information on a case that had been cold for four years. Such risk derived either from potential retribution from Seth, or by exposure to possible criminal liability.[22]

Starcher was able to corroborate much, albeit not all, of Cottrill's claims during a search of the property. Specifically,

---

[22]<u>See supra</u> n. 13.

officers located a large hole in the place where she had described it, and, in that hole, found a bullet and evidence of human remains.[23] Further, officers found a gun in Denmark's house matching the description provided by Cottrill.

The totality of the circumstances establish the following: 1) the close relationship involving Cottrill, Beach, Seth, and his family; 2) the detailed statements of Cottrill, a witness with personal knowledge; 3) statements of other witnesses that Seth had confessed to them that he had killed Beach; 4) the weapon found in the Denmark house matching the description of the murder weapon; and 5) the large man-made hole located on the Denmark property, precisely where Cottrill had indicated it would be, and containing a bullet and human remains. Based on all of this, Starcher was objectively reasonable in determining that probable cause existed to arrest Denmark, and therefore is entitled to qualified immunity.

---

[23]To be clear, not everything that Starcher believed to be true based on his investigation was specifically laid out in the criminal complaint. For example, the initial claims of the anthropologist were not included. Nonetheless, these factored into his determination as to whether probable cause existed. Any of Starcher's omissions through lack of detail in the criminal complaint do not weaken his probable cause finding. On the contrary, most, if not all, of the omitted details further bolster his finding of probable cause.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 70] AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72] AND
DISMISSING CASE WITH PREJUDICE**

**C.   Denmark's Motion for Partial Summary Judgment**

A careful review of Denmark's motion for partial summary judgment establishes that it is totally lacking in merit, and the Court **DENIES** the motion.

## CONCLUSION

Because Starcher's conduct did not violate a constitutional right as required under the first step of the <u>Saucier</u> analysis, he is entitled to qualified immunity. Furthermore, Denmark has failed to satisfy a necessary element of her claim, namely, that the criminal proceedings terminated favorably to her. Accordingly, the Court **GRANTS** Starcher's motion for summary judgment, **DENIES** Denmark's motion, and **DISMISSES** Denmark's complaint **WITH PREJUDICE**.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: March 22, 2016.

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE